No. 13608

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

BAKER NATIONAL INSURANCE AGENCY, et al.,

Plaintiffs and Appellants,

-vs-

MONTANA DEPARTMENT OF REVENUE,

Defendant and Respondent.

Appeal from: District Court of the First Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellants:

Towe, Ball & Enright, Billings, Montana
Neil Enright argued, Billings, Montana

For Respondent:

R. B. McGinnis argued, Helena, Montana

Submitted: September 26, 1977

Decided: NOV 22 1977

Filed: NOV 22 1977

Thomas J. Kearney
————————————————— Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

Appellants appeal from the denial of their petition to file consolidated tax returns for the taxable year 1972. We affirm.

On June 29, 1973, the Department of Revenue issued determination letters on appellants Bozeman Insurance Agency, Inc., Baker National Insurance Agency, Inc., and Baker National Bank, denying them permission to consolidate for the taxable year 1972. On July 25, 1973, these appellants filed timely protests and petitioned for a re-evaluation of the determination letters. The petition was denied.

On September 11, 1973, respondent issued determination letters on appellants Roundup Insurance Agency, Inc., Miners & Merchants Bank, Robert Agency, Inc., First Security Bank of Red Lodge and Red Lodge Insurance Agency, Inc., denying them permission to file consolidated returns. Again, protests were timely filed and denied by respondent.

Subsequently, all appellants were joined for a single appeal before the State Tax Appeal Board (STAB) on December 18, 1973. On March 19, 1974, following submission of briefs by both parties, STAB rendered its opinion and order, wherein it found appellants were not eligible to file consolidated returns because:

(1) Permission was not granted by respondent pursuant to section 84-1509, R.C.M. 1947; and

(2) Appellants do not qualify as a "unitary business" as defined by section 84-1509, R.C.M. 1947.

Appellants' request for reconsideration by STAB was denied by an order dated May 13, 1974. Thereafter, on May 17, pursuant to the provisions of section 84-709.1, R.C.M. 1947, as amended, appellants petitioned the District Court of the First Judicial District for review of the STAB decision. The STAB decision was affirmed by the District Court on September 23, 1976.

During the tax year in question, the controlling interest in all corporations involved herein was owned by one entity. The appellant corporations were engaged in the banking and insurance businesses in four Montana cities. A similar mode of operation was used in each of these cities whereby a parent-subsidiary relationship was created between the insurance agency and the bank. Each insurance agency acted as a one-bank-holding-company and owned in excess of 80 percent of the stock of its subsidiary bank. The insurance agencies provided managerial services to their respective banks and charged a fee for the services rendered. Each bank owned its building and provided office space to the insurance agency through a rental agreement. The relationship of the appellant corporations may be set forth as follows:

| Tax year in question | Parent Company | Subsidiary | Lowest % of ownership |
|---|---|---|---|
| | (1) | (2) | |
| 1968-1972 | Roundup Insurance Agency Robert Agency | Robert Agency, Inc. Montana Nat'l Bank of Roundup (3) | 100% 91% (1969) |
| 1970-1972 | Red Lodge Ins. Agency, Inc. | Mont. Nat'l Bk of Red Lodge(4) | 87.3% |
| 1972 | Bozeman Ins. Agency, Inc. | Mont. Nat'l Bk of Bozeman | 96.6% |
| 1972 | Baker Nat'l Ins. Agency | Baker Nat'l Bk | 94.4% |

[1] Formerly Woodbury Investment Corporation – renamed in 1969.
[2] Liquidated in 1969 by transferring all assets to Woodbury Invest. Corp.
[3] Formerly Miners & Merchants Bank.
[4] Formerly First Security Bank of Red Lodge.

The management fees paid by the banks to the insurance agencies were arbitrarily determined and not at arms length. Similarly, the rent paid by the insurance agencies to the banks was arbitrarily determined. The acknowledged purpose for the bank-insurance agency relationship was to provide a medium by which profit and loss could be shifted between the corporations by means of the management fees and rent.

Appellants sought permission from respondent to file con-

- 3 -

solidated corporate license tax returns for each insurance agency and its subsidiary bank. Respondent took the position appellants did not qualify to file consolidated returns pursuant to the requirements of section 84-1509, R.C.M. 1947.

Appellants appealed to STAB and STAB held that section 84-1509 does not grant taxpayers an absolute right to file consolidated returns, but rather gives respondent the discretionary authority to determine when consolidated returns are appropriate. STAB concluded by holding appellants did not qualify as a unitary business and, therefore, were not eligible to file consolidated returns.

Two issues are before this Court on appeal:

1. Whether the parent-subsidiary corporations are conducting a unitary business as defined by section 84-1509, R.C.M. 1947.

2. Whether respondent has the discretionary authority to determine when consolidated returns are appropriate.

This case centers around an interpretation of section 84-1509, R.C.M. 1947, which states in part:

> "(1) Corporations which are affiliated may not file a consolidated return unless at least eighty per cent (80%) of all classes of stock of each corporation involved is owned directly or indirectly by one (1) or more members of the affiliated group.

> "(2) Corporations may not file a consolidated return unless the operation of the affiliated group constitutes a unitary business and permission to file a consolidated return is given by the state department of revenue. For purposes of this section, a 'unitary business operation' means one in which the business operations conducted by the corporations in the affiliated group are interrelated or interdependent to the extent that the net income of one corporation cannot reasonably be determined without reference to the operations conducted by the other corporations.

> "(3) If the conditions of subsections (1) and (2) of this section are met, the state department of revenue may require corporations to file a consolidated return when the department considers a consolidated return necessary."

Section 84-1509 contains three conditions that must be fulfilled prior to filing a consolidated tax return:

(1) Common ownership of at least 80% of all classes of stock of each affiliated corporation;

(2) A unitary business operation; and

(3) Permission from the Department of Revenue to file a consolidated tax return.

The record reflects appellants fulfill the 80% ownership requirement as to all the involved corporations. The crux of appellants' first issue, however, is the District Court's finding that appellants were not conducting a unitary business for the tax year in question.

A test for the identification of a unitary business operation is found in section 84-1509(2) wherein it is stated:

> " * * * a 'unitary business operation' means one in which the business operations conducted by the corporations in the affiliated group are interrelated or interdependent to the extent that the net income of one corporation cannot reasonably be determined without reference to the operations conducted by the other corporations."

Substantial and convincing evidence is found in the record to support the District Court's finding that appellants were not conducting a unitary business operation for the taxable year 1972.

Examples of such evidence are:

(1) Mr. Les Alke, the Administrator of the Financial Division of the Department of Business Regulations of the State of Montana, testified as follows:

> "Q. Would you say that in the case of one of the banks in question, you could reasonably determine its net income, standing alone and separate -- just of the banking institution, itself? A. It's practically a requirement in reporting income expense and performance and solvency and what have you. We do not allow them to intermingle other business accounting or operations with the bank's records.
>
> "Q. Even if it's an insurance agency operating in the same building, they would have to keep

- 5 -

their books and records separate? A. Absolutely.

"Q. Are you familiar with Section 84-1509, R.C.M. 1947, dealing with consolidated returns? A. To some extent, yes.

"Q. You have read the statute? A. Yes, I have.

"Q. Would it be your opinion, based on some 20 years as a bank examiner and working in this field, that with a bank and an insurance company in this situation, you could reasonably determine the net income of the bank without reference to the operations conducted by the insurance company? A. Without a question. "

(2) Harry A. Maschera, Chief Insurance Examiner for the Montana State Auditor's Office, testified in regard to the independence of the insurance agencies' net income:

"Q. Is it your opinion, as a regulation of the insurance agencies, that a corporation which is an insurance agency and a parent holding company of a bank, is it your opinion that they would not be able to file or would not be able to determine their net income without reference to the operations of the bank? A. The insurance company would be required to determine their net income."

(3) Mantz Hutchinson, Assistant Administrator of the property assessment division, Department of Revenue, who had recently completed an audit of one of the appellant banks was also called to testify. Upon questioning, Mr. Hutchinson stated in his opinion the income of the banks could be determined standing alone:

"Q. In determining the net income of the bank in question, was it necessary for you to look at the activities of the insurance company located with that bank? A. No, it was not.

"Q. Are you familiar with Section 84-1509, R.C.M. 1947? A. I am.

"Q. Would it be your opinion after just recently conducting an audit of this corporation, that you were able to determine the net income of that corporation without reference to the operations conducted by the other corporations; namely, the insurance company? A. Yes, we were."

The evidence is abundantly clear the business operations of the insurance agencies are not so interrelated or interdependent with the banks' operations that the net income of such agencies

cannot reasonably be determined without reference to the banks' operations. Conversely, the banks' operations are not interdependent on the operations of its parent insurance agencies. We, therefore, hold the record contains substantial evidence to support the District Court's finding that appellants were not conducting a unitary business operation.

Appellants' second issue is that the District Court erred by holding respondent did not abuse its discretion by denying appellants' request for permission to file a consolidated tax return. The crux of this issue is a determination of whether the Department of Revenue may exercise its discretion in granting permission to file a consolidated tax return to an otherwise qualified unitary business, or whether it is mandatory that such permission be granted once the business meets the 80% common stock ownership test and proves its business operation is unitary in nature.

The cardinal principle of statutory construction is that the intent of the legislature is controlling. Section 93-401-16, R.C.M. 1947; Montana Association of Underwriters v. State of Montana,____Mont.____, 563 P.2d 577, 34 St.Rep. 297 (1977); Keller v. Smith, ____Mont.____, 553 P.2d 1002, 33 St.Rep. 828 (1976); Dunphy v. Anaconda Co., 151 Mont. 76, 438 P.2d 660 (1968), and cases cited therein. In the instant case, the plain meaning of the statute is not readily gleaned from its language. We, therefore, resort to material supplementary to the statute in order to determine legislative intent. The committee records maintained in conjunction with the consideration of and the ultimate passage of section 84-1509 clearly reveal the legislative intent of this section. The following entry, which relates to the section involved herein, is found in the January 23, 1969, record of the Ways and Means Committee meeting:

"Howard Vralstad, Director of Income and License Tax Department spoke briefly and stated under existing law it is left entirely up to the State Board of Equalization whether to allow a corporation to file a consolidated return. This bill just makes into law the regulations the Board is now following."

We, therefore, hold section 84-1509, R.C.M. 1947, is permissive rather than mandatory and respondent did not abuse its discretion in denying appellants' request for permission to file a consolidated return.

Affirmed.

_Frank D. Haswell_
Justice

We concur:

_Dane H. Harrison_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

Justices