FOREMAN, Respondent, v. BEAVERHEAD COUNTY, ET AL., Appellants.

No. 8479

Submitted February 13, 1945. Decided June 23, 1945.

161 Pac. (2d) 524

Mr. R. V. Bottomly, Attorney General, and Mr. I. W. Choate, of Helena, for appellants.

Mr. Lester H. Loble and Mr. Albert H. Angstman, both of Helena, for respondent.

HONORABLE F. V. WATTS, District Judge (sitting in place of MR. JUSTICE ADAIR, disqualified), delivered the opinion of the court.

This is an appeal from a judgment awarded plaintiff for the recovery of money paid under protest as a tax upon the net proceeds of mines. It is submitted upon an agreed statement of facts and, so far as deemed pertinent, they are as follows:

That from 1881 to 1898 the Hecla Consolidated Mining Company was the owner of certain quartz mines at the head of Trapper Creek in Beaverhead County, and the owner and operator of a concentrating mill situated at Greenwood, on what was known as Everest Mill Site No. 1, which was patented. It also located three mill sites known as Everest Mill Sites Nos. 2, 3 and 4, which were on unpatented ground. In the operation of the mill the high grade ores were milled, concentrates were produced and sold, and the residue deposited as tailings by flowing water. The tailings contained certain mineral values, which fact was then known to the company, but the machinery, equipment and metallurgical processes then available could not recover

those values. As the tailings were deposited, the company constructed bulkheads to impound the same, and did impound them, on the four mill sites referred to. The tailings formed a definite and segregate body or mass, commonly known as the Greenwood Tailings Dump. About the year 1921 the tailings were acquired from the owner by George B. Conway who thereafter and on or about November 28, 1939, sold a 60% interest therein to the plaintiff. This sale was evidenced by a contract in writing which was introduced as evidence in the lower court.

The quartz mines which the Hecla Consolidated Mining Company owned, and from which the Greenwood Tailings Dump originated, were not operated as a mine or mines during the year 1940, having been closed down for many years prior to that time. Plaintiff never had any interest in Hecla Consolidated Mining Company or its mines.

After plaintiff purchased the 60% interest in said Greenwood Tailings Dump he proceeded to reduce the same for its mineral content and recovered valuable minerals therefrom, which were sold and the proceeds received by plaintiff.

The question is whether the net proceeds from the treatment of the tailings constitute net proceeds of a mine. If not the judgment must be affirmed.

Section 3, Article XII of the Constitution provides the manner of taxing mines and mining claims, and that "the annual net proceeds of all *mines* and *mining claims* shall be taxed as provided by law."

Pursuant to that constitutional provision the legislature enacted Sections 2088 to 2095, inclusive, Revised Codes of Montana, 1935, to make effective the above mentioned provision.

Section 2088 provides that "the annual net proceeds of all *mines* and *mining claims,* shall be taxed as other personal property."

Section 2089 provides that "Every person, partnership, corporation or association, engaged in *mining* upon any quartz vein or lode, or placer *mining claim,* or *mining* from or upon any *mine* whatsoever containing" certain minerals shall furnish

the state board of equalization a verified statement showing certain information in said section required, including "the gross yield or value in dollars and cents" of the valuable minerals, etc., recovered.

Section 2090 provides that the "state board of equalization shall calculate and compute from said returns (statement) the gross product yielded from such *mine* \* \* \*'' and shall compute "the net proceeds in dollars and cents of said *mine* yielded to such person, corporation or association so *engaged in mining*" by making the deductions specifically set forth therein. The net proceeds are then ascertained and determined by subtracting from "the value in dollars and cents of the gross product" the allowable statutory deductions.

The tax is then assessed upon this determined value and such tax is made a "lien upon all of the right, title and interest of such operator in or to such *mine* or *mining claim*" and the machinery, building, tools and equipment used in "operating said *mine* or *mining claim*." Sec. 2090.2, Revised Codes of Montana 1935.

Section 1999, Revised Codes of Montana 1935, provides the classification of property for taxation and places in Class One— "The annual net proceeds of all *mines* and *mining claims*."

The foregoing then, in brief, is the method and manner "provided by law" by the legislature, under the Constitution, of ascertaining and taxing the "annual net proceeds of all *mines* and *mining claims*." (Emphasis in above paragraphs supplied.)

Under the above provisions the State Board of Equalization assessed the net proceeds from the mentioned tailings dump for the purpose of levying a net proceeds tax thereon for the year 1940.

From the above it is to be noted that it is the annual net proceeds of mines and mining claims which are taxed.

The word "mine" has been defined by this court in Northern Pacific Railway Co. v. Mjelde, 48 Mont. 287, 137 Pac. 386, which definition was approved in Northern Pacific Railway Co. v.

Musselshell County, 54 Mont. 96, 169 Pac. 53. A tailings dump under the above definition is not a mine.

A mine or mining claim is real property (Sec. 6667, Revised Codes of Montana, 1935), and it has been so held by this court in Britannia Mining Co. v. United States Fidelity & Guaranty Co., 43 Mont. 93, 115 Pac. 46.

Tailings are the waste material remaining after the removal of the valuable minerals in the processing of the product of the mine. If they are permitted to spread upon and to mingle with the earth, they become a part thereof and are real estate, but if they are kept separate and apart therefrom, as in the instant case, they are personal property. The particular tailings dump in question here has been held to be personal property. Conway v. Fabian, 108 Mont. 287, 89 Pac. (2d) 1022.

The legislature could have specifically extended the net proceeds tax to valuable minerals recovered from tailings dumps but has not done so. The court must construe the statutes as it finds them.

In the construction of the statute the office of the court is to ascertain and declare what is in terms and in substance contained therein, not to insert what has been omitted, or to omit what has been inserted. Sec. 10519, Revised Codes of Montana 1935; Maki v. Anaconda C. M. Co., 87 Mont. 314, 287 Pac. 170; Clark v. Olson, 96 Mont. 417, 31 Pac. (2d) 283.

From the above it seems clear that a tailings dump, being personal property, cannot be classified as a mine, and the production of valuable minerals therefrom cannot be considered as products from a mine.

To paraphrase the language used in South Utah Mines & Smelters v. Beaver County, 262 U. S. 325, 43 S. Ct. 577, 67 L. Ed. 1004, the tailings, severed and removed from the mine, changed in character, placed on other and separate lands and having a value of their own, constitute a unit of property entirely apart from the mine from which they had been taken. This case is discussed in the briefs of counsel. The constitutional

provisions and statutes under which it was decided, however, are not the same as the Montana law.

The case of Beaver County v. South Utah Mines & Smelters, 8 Cir., 17 Fed. (2d) 577, has been cited by respective counsel, but the same is not in point here. That action was decided under a Utah statute which defined "net proceeds" as including proceeds from "all dumps and tailing" as well as "a metalliferous mine or mining claim." Laws 1919, c. 114, sec. 1.

Under the agreed statement of facts the Hecla Consolidated Mining Company ceased to operate the mine, the original source of the tailings dump, in 1898. During the time it operated the mine it should have paid, and doubtless did pay, a net proceeds tax upon the product of its mine. If the tailings had any value as a product of such mine, that value should have been ascertained at the time and included for the purpose of ascertaining its net proceeds tax. It should be stated that there is no question of any subterfuge or evasion raised herein.

Under the facts as presented herein the proceeds of the treatment of these tailings are not net proceeds of a mine and are therefore not taxable as net proceeds of a mine.

The tailings dump was, however, property and as such was, and is, subject to tax, (Article XII, sec. 1, Montana Constitution; sec. 1997, Revised Codes of Montana 1935) the same not being exempt under Section 1998. Being taxable it was the duty of the assessor of Beaverhead County to seek out and assess the same as personal property in Class 7 of Section 1999. Its value for the purposes of taxation may be difficult to determine, but the statutes provide a remedy for any unreasonable or arbitrary action.

The judgment is affirmed.

Mr. Chief Justice Johnson, Associate Justices Morris and Cheadle, and District Judge William R. Taylor, (sitting in place of Mr. Justice Angstman, disqualified), concur.

Rehearing denied September 13th, 1945.