No. 91-027

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

IN THE MATTER OF THE SEIZURE OF A 1988 CHEVROLET VAN, CALIFORNIA
LICENSE NUMBER 3M38781.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
               In and for the County of Gallatin,
               The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

               Marc Racicot, Attorney General, Helena, Montana;
               Paul D. Johnson, Assistant Attorney General,
               Helena, Montana;  Mike Salvagni, County Attorney,
               Bozeman, Montana;  Marty Lambert, Deputy County
               Attorney, Bozeman Montana.

        For Respondent:

               Helene Orenstein, Attorney at Law, Bozeman, Montana.

                    Submitted on briefs:   July 16, 1991

                              Decided:   December 30, 1991

        Filed:

                              Clerk

FILED

DEC 30 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Justice R. C. McDonough delivered the Opinion of the Court.

The State of Montana appeals the order of the District Court of the Eighteenth Judicial District, Gallatin County, dismissing the State's petition for forfeiture and releasing the respondent's Chevy Van. The District Court found it within its discretionary power to release the van to protect the interests of a lienholder despite entering default against that lienholder. We reverse.

The dispositive issue on appeal is whether the District Court abused its discretion by denying and dismissing the petition for forfeiture.

Brian Soule and his wife Elizabeth Soule were arrested for possession of dangerous drugs and paraphernalia, violations of Title 45, Chapter 9, MCA. The circumstances surrounding their arrest were as follows. Law enforcement authorities in Los Angeles, upon a security check at the airport, discovered a package containing drugs bound for Brian Soule via Gallatin Field. The authorities in Los Angeles notified Gallatin County and a search warrant was obtained. Upon arrival of the package at Gallatin Field, Brian Soule claimed the package, walked to the subject Chevy Van, which was owned by Brian Soule, and drove it across the airport to a parking lot. The officers approached the van, presented the warrant and the subsequent search yielded illegal drugs and paraphernalia. Brian and Elizabeth entered a plea agreement and pled guilty to felony possession of dangerous drugs, misdemeanor possession of dangerous drugs and misdemeanor possession of drug paraphernalia.

2

The instant case is a civil proceeding filed under § 44-12-102 (1)(d), MCA, which provides in part for the forfeiture of "all conveyances, including. . . vehicles, . . . that are used or intended for use in any manner to facilitate the commission of a violation of Title 45, Chapter 9." There is no dispute that Brian's father, Peter Soule, has a security interest in the Chevy Van. Both Peter and Brian were served with copies of the summons and petition. The State presented an affidavit of service on Peter Soule.

Brian Soule filed an answer to the complaint, alleging the forfeiture of the Chevy Van was subject to his father's secured interest because his father neither had knowledge of, nor consented to Brian's violation of Title 45, Chapter 9. Peter Soule did not respond on his own behalf and at the hearing, the court entered a default of Peter Soule.

However, the District Court, relying on § 44-12-205(3), MCA, found broad discretionary powers to release the vehicle to protect the interests of Peter Soule. Section 44-12-205(3), MCA, provides:

> In making a disposition of property under this chapter, the court may take any action to protect the rights of innocent persons.

The District Court found:

> there (was) not a scintilla of evidence that Peter W. Soule was aware of, or had anything to do with Brian and Elizabeth Soule's possession or use of illegal drugs, or drug paraphernalia.

As such, the District Court determined Peter Soule to be an innocent person within the meaning of § 44-12-205(3), MCA, and the court acted to protect his interest.

3

The standard of review for discretionary trial court rulings is whether the trial court abused its discretion. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601. Section 44-12-205(3), MCA, makes clear that the legislature was sensitive to the rights of innocent persons and granted broad discretion to the courts to protect those rights. However, the legislature has also provided specific provisions regarding the protection of the rights of claimants with a security interest in seized property. See §§ 44-12-204, and 205(2), MCA. Section 44-12-203, MCA, states:

> There is a rebuttable presumption of forfeiture as to all property listed in 44-12-102... (Emphasis supplied.)

The Chevy Van is clearly within the scope of property listed in § 44-12-102, MCA. Section 44-12-204, MCA, provides:

> In order to rebut the presumption of forfeiture:
> (3) a claimant of a security interest in the property who has a verified answer on file must prove that his security interest is bona fide and that it was created after a reasonable investigation of the moral responsibility, character, and reputation of the purchaser and without knowledge that the property was being or was to be used for the purpose charged. . . . (Emphasis supplied.)

Here, Peter Soule failed to file an answer, failed to appear and offered no proof of anything whatsoever.

Section 44-12-205(2)(a), MCA, provides the following:

> If proper proof of his claim is presented at the hearing by the holder of a security interest, the court shall order the property released to the holder of the security interest. . .

Brian Soule, not his father, claimed the lien, in his answer, as an affirmative defense to the forfeiture. Brian has no standing nor did he present any evidence to support his father's claim.

4

"The judicial function in construing and applying statutes is to effect the intention of the legislature. In determining legislative intent, the court looks first to the plain meaning of the words used in the statute." State ex. rel. Roberts v. Public Service Commission (1990), 242 Mont. 242, 790 P.2d 489. The language of the forfeiture statutes cited above is clear.

Apparently, the court was apprehensive about placing an affirmative duty on Peter Soule to prove that he was an 'innocent person' entitled to return of the Chevy Van. The legislature had no such apprehension. The presumption is for forfeiture and the burden rests on the secured interest holder to rebut that presumption. Sections 44-12-203 to 204, MCA. It has long been held under Montana statutes that a presumption remains until rebutted by preponderance of contrary evidence and disappears only when the party to whom it is opposed produces sufficient evidence to preponderate against it. N.Y. Life Insurance Company v. Gamer, (9th Cir. 1939), 106 F.2d 375.

Peter Soule received proper notice and failed to assert his rights and therefore default was properly entered. Peter Soule failed to rebut the presumption as required by § 44-12-102, MCA.

We conclude that the District Court abused its discretion by acting in a manner inconsistent with the statutes on forfeiture. The order of the District Court is reversed.

_____
Justice

We Concur:

_____
Chief Justice

_____
John Conway Harrison

_____


_____
Justices

Justice Karla M. Gray, dissenting.

I respectfully dissent from the opinion of the majority. Briefly stated, the majority notes the existence of § 44-12-205(3), MCA, granting the district court broad discretionary authority, and then goes on to ignore it altogether. The majority does not attempt to construe the subsection either on a stand-alone basis, as part of the statute within which it is contained, or in relation to the other statutes comprising the Montana Forfeiture Act. This lack of analysis results in giving § 44-12-205(3), MCA, no effect whatsoever. I cannot agree.

Facts in addition to those set forth in the majority opinion are important to an appropriate analysis of the case before us. A bench trial on the forfeiture petition was held on June 25, 1990. Brian Soule was represented by counsel, but neither he nor his father appeared. At the outset of the proceeding, the State requested, and the court entered, a default of Peter Soule for failure to respond or appear; no default judgment was entered.

The proceeding continued, with Lieutenant Christie as the only witness. Christie first testified to the circumstances surrounding the arrest of Brian and Elizabeth Soule. He explained, on direct examination, that he had found a receipt in the vehicle indicating that Peter Soule was the holder of a security interest in the van. Christie then testified in some detail about a telephone conversation he had with Peter Soule; Peter Soule indicated during the conversation that he had co-signed a GMAC loan with Brian in order to help Brian purchase the van. Peter Soule later paid off

7

the loan on the understanding that Brian would pay him back, which Brian never did. Peter Soule told Christie that he was aware of Brian's drug problems and had attempted to help by paying for a drug treatment program for both Brian and Elizabeth, and by sending them to Brian's grandmother in Montana after their release from that program in hopes of getting them away from drugs.

Briefs were submitted on July 9, 1990. The District Court subsequently entered its judgment releasing the van to Peter Soule and dismissing the petition for forfeiture with prejudice.

The issue is whether the District Court erred in finding Peter Soule an innocent person and dismissing the petition for forfeiture pursuant to § 44-12-205(3), MCA. The standard of review for discretionary trial court rulings is whether the trial court abused its discretion. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603-604.

The procedural requirements for forfeiture proceedings of the type before us are set forth in §§ 44-12-201 et seq., MCA. Section 44-12-204, MCA, provides detailed provisions by which owners and claimants of security interests with verified answers on file can rebut the presumption of forfeiture which arises under § 44-12-203, MCA. Subsections (1) and (2) of § 44-12-205, MCA, provide for mandatory dispositions of property in the event certain findings are made by the court based on proof presented at the hearing by an owner or a holder of a valid security interest in the property at issue. Section 44-12-205(3), MCA, on the other hand, allows the court to "take any action to protect the rights of innocent

8

persons" in disposing of property otherwise subject to forfeiture.

This Court consistently follows the fundamental rule of statutory construction that:

> [T]he judicial function in construing and applying statutes is to effect the intention of the legislature. In determining legislative intent, the Court looks first to the plain meaning of the words used in the statute. If intent cannot be determined from the content of the statute, we examine the legislative history.

State ex rel. Roberts v. Public Service Commission (1990), 242 Mont. 242, 246, 790 P.2d 489, 492.

The language of § 44-12-204, MCA and subsections (1) and (2) of § 44-12-205, MCA, are clear and plain and susceptible of only one interpretation on a stand-alone basis. Under these subsections, the court has no discretion in how it disposes of property subject to forfeiture. There is no doubt that Peter Soule did not make the requisite showing to protect his interest in the van under these sections.

The intended interplay between the sections discussed above and subsection (3) of § 44-12-205, MCA, as well as the intended meaning of "innocent persons" therein, however, cannot be ascertained from the words themselves. Therefore, it is necessary to focus specifically on both the language and the legislative history of § 44-12-205(3), MCA.

Section 44-12-205(3), MCA, provides that "[i]n making disposition of property under this chapter, the court may take any action to protect the rights of innocent persons." (Emphasis added.) This wording clearly grants a trial court the broadest possible discretion in protecting the interests of innocent

9

persons. It is also clear, from the absence of any limiting language, that such discretion can be exercised in favor of any innocent person. In addition, nothing in the sweeping grant of discretion suggests that an "innocent person" must have jumped through the procedural hoops otherwise provided for lienholders.

The majority adopts the State's position that we must read into § 44-12-205(3), MCA, the requirements of § 44-12-204 and § 44-12-205 (1) and (2), MCA. Nothing contained therein suggests such a reading. "In the construction of a statute, the office of the judge is . . . not to insert what has been omitted. . . ." Section 1-2-101, MCA.

For the most part, the Montana Forfeiture Act is patterned after the federal act found at 21 U.S.C. § 881. Section 44-12-205(3), MCA, however, is unique to Montana and, as such, we must assume that the legislature included it for a particular reason. It is this Court's duty to ascertain that legislative intent and, insofar as possible, give it meaning in interpreting and construing the statutes involved. Palmer v. Montana Ins. Guar. Ass'n (1989), 239 Mont. 78, 779 P.2d 61. Thornock v. State (1987), 229 Mont. 67, 745 P.2d 324; Darby Spar. Ltd. v. Dept. of Revenue (1985), 217 Mont. 376, 705 P.2d 111.

The Montana legislature added § 44-12-205(3), MCA, to the Montana Forfeiture Act in 1987. The statute must have meaning as we presume the legislature does not pass meaningless laws. Mills v. Commissioner of Insurance (1987), 226 Mont. 387, 736 P.2d 102; Crist v. Segna (1981), 191 Mont. 210, 662 P.2d 1028. We also

10

presume that this amendment changed the law in some way or the legislature would not have added it to the existing law.  Cantwell v. Geiger (1987), 228 Mont. 330, 742 P.2d 468.

The 1987 bill amending the Montana Forfeiture Act originally was introduced to expand and broaden the Act and to enhance cooperation between federal and state agencies; as introduced, it did not contain what ultimately became § 44-12-205(3), MCA. Serious questions were raised by members of the Senate Judiciary Committee during the hearing on the bill relating to jointly owned property.  The Committee was assured that the existing provisions of §§ 44-12-204 and -205, MCA, protected innocent owners and that the district courts would determine who was an innocent owner able to retain property under those sections.  Minutes Legislative Hearing S.B. 241, February 6, 1987, at 2.  Notwithstanding those assurances, one legislator expressed concern about how innocent victims really would be protected; another stated that clearer language was needed dealing with innocent parties.  Id.

Section 44-12-205(3), MCA, was added to S.B. 241 as a committee amendment to address the expressed concerns.  The committee had before it, but did not adopt, alternative language granting the district courts discretion to "take any action . . . not inconsistent with the provisions of this chapter."  (Emphasis added.)

Based on this legislative history, it is clear that the legislature consciously chose the term "persons," rather than the narrower term "owners," in enacting a provision significantly more

11

protective than it considered the existing statutes. Furthermore, in doing so, it did not support alternative language limiting subsection (3)'s application only to situations consistent with other provisions of the Act. The legislature specifically having rejected the "consistent with" approach as not sufficiently protective, the majority now adopts it.

Legislative concern for the rights of innocent persons continued even after enactment of § 44-12-205(3), MCA. When additional amendments to the Act were proposed in 1989, legislators received further assurances that the forfeiture statutes would not unnecessarily burden innocent persons. "[T]his entire procedure is subject to the scrutiny and control of the District Courts of the State of Montana," which constitute a "significant balancing factor." Minutes, Legislative Hearing, S.B. 377, March 9, 1989, at 2. The majority simply ignores the legislative history and intent of § 44-12-205(3), MCA, dismissing it with a cavalier reference to the fact that "the legislature was sensitive to the rights of innocent persons."

When the legislature uses a particular term, this Court's duty is to construe it "according to the context and the approved usage of the language. . . ." Mydlarz v. Palmer/Duncan Const. Co. (1984), 209 Mont. 325, 336, 682 P.2d 695, 701. Therefore, I would read "innocent persons" as a general term which includes, but is not limited to, "owners," and find that, according to the language of § 44-12-205(3), MCA, a person is "innocent" when so determined by the district court on the particular facts before it.

12

In my opinion, this close review of the legislative history mandates a conclusion that, in enacting § 44-12-205(3), MCA, the legislature intended the broadest conceivable grant of discretion to the courts in protecting the rights of innocent persons with regard to property otherwise subject to forfeiture. I further conclude that the "under this chapter" language in that statute is sufficiently broad, and intended, to override the other detailed forfeiture statutes when necessary, in the court's discretion, to protect innocent persons and prevent unjust results. To conclude otherwise ignores the legislature's clear intent. Finally, absent any indication in the statute or the legislative history to the contrary, I conclude that the only reasonable interpretation of the legislature's failure to include any burden of proof requirement for an innocent person, as it clearly included for lienholders filing a verified answer, is that no such specific burden was intended. The majority's imposition of the requirements of other statutory provisions into § 44-12-205(3), MCA, totally negates and eviscerates the broad discretion granted to the district court by that section.

It remains only to apply the conclusions set forth above regarding § 44-12-205(3), MCA, to the facts and judgment in the instant case. Here, Peter Soule was served with the petition for forfeiture and summons, as an owner or claimant of the van, under § 44-12-201, MCA. A verified answer was filed by the registered owner of the van, Brian Soule, as required by § 44-12-202, MCA, but no answer was filed individually by Peter Soule. At the outset of

13

the forfeiture hearing and upon a motion by the State, the District Court entered a default against Peter Soule due to his failure to file an answer as required by § 44-12-202, MCA. The entry of the default was neither based on, nor related to, the question of whether Peter Soule was an innocent person under § 44-12-205(3), MCA. No default judgment was entered.

A "default entry is simply an interlocutory order that in itself determines no rights or remedies. . . ." Cribb v. Matlock Communications, Inc. (1989), 236 Mont. 27, 30, 768 P.2d 337, 339. Thus, the District Court's entry of Peter Soule's default did not finally determine his rights or status in the proceeding. Nor did the entry of the default, in and of itself, foreclose the District Court's ability to "take any action to protect the rights of innocent persons" under § 44-12-205(3), MCA.

The real question in this case is whether, subsequent to the entry of the default, Peter Soule's status in relation to the van was before the District Court, thus enabling the court to act under § 44-12-205, MCA. Under the particular facts of this case, it was.

While the record is clear that Peter Soule did not appear at the forfeiture proceeding, his status and interest were before the court via Brian Soule's verified answer. Furthermore, the State itself established Peter Soule's status and interest in the van through the testimony of Lieutenant Christie. That testimony also established that, while Peter Soule knew of Brian's drug problems, he had paid to enroll Brian and Elizabeth in a treatment program for those problems and then, on their release from that program,

14

sent them to Brian's grandmother in Montana where they would be away from drugs. The court concluded that the record did not support any inference of knowledge or involvement by Peter Soule in the drug possession by Brian from which the forfeiture proceeding arose. On the basis of the State's evidence, the court concluded that Peter Soule was an "innocent person" under § 44-12-205(3), MCA, and entered judgment accordingly, releasing the van to Peter Soule. The District Court concluded that to do otherwise would be grossly unfair and inequitable under the circumstances of this case.

It is a rule of statutory construction that the legislature does not pass meaningless legislation. The majority's interpretation, or lack thereof, of § 44-12-205(3), MCA, produces precisely that result. It renders meaningless an act of the legislature, namely, the insertion into the Act patterned on the federal model of a subsection peculiar to Montana and clearly intended to balance the harshness of the forfeiture laws by protecting the rights of innocent persons without regard to other statutory provisions regarding such forfeitures. As discussed above, the majority's interpretation of § 44-12-205(3), MCA, gives it no effect whatsoever.

Under the particular facts of the instant case, Peter Soule's legitimate interest in the van was properly before the court. It was established at the hearing by the State's own witness, and was not disputed. The record before us reflects a father's repeated efforts to help get his son's life in order; it certainly does not

15

reflect any acquiescence in, or consent to, his son's drug-related criminal offenses. Peter Soule's co-signing of Brian's loan with GMAC and paying off that loan of approximately $10,000 were further efforts by a concerned father who had no connection whatsoever with the criminal offense by Brian which formed the foundation for the forfeiture proceeding.

The circumstances of this case, the record before us, and the cited legislative history support the District Court's conclusion that Peter Soule was an innocent person and its action in protecting the rights of such an innocent person pursuant to its broad discretion under § 44-12-205(3), MCA. I would hold that the District Court did not abuse its discretion and affirm its dismissal of the forfeiture petition.

_____
Justice

Justice Terry N. Trieweiler specially concurring.

I concur with the dissent of Justice Gray, but am unable to join in her remarkable restraint.

The portions of the forfeiture statute relied upon by the majority turn traditional notions of fairness, due process, burden of proof, and presumption of innocence upside down. The statute has only one redeeming provision which is found in § 44-12-205(3), MCA. The majority opinion gives its blessing to those provisions of the forfeiture statute which are most offensive to the traditions of our justice system, and totally ignores that portion of the statute which was intended by the legislature to ameliorate the statute's harshness.

Under our former system of justice, innocent people did not have the burden of proving innocence. The State had the burden of proving their guilt before punishing them or seizing their property. Regardless of that fact, in this case Peter Soule did not need to appear to prove his innocence because his innocence was undisputed.

While the majority opinion does substantial harm to the property rights of innocent citizens, it does nothing to further the "war on drugs."

_____
                Justice

I concur in the foregoing concurrence of Justice Trieweiler.

_____
        Justice

17

December 30, 1991

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Mike Salvagni, Gallatin County Attorney
Marty Lambert, Deputy
615 So. 16th Ave., Rm. 100
Bozeman, MT 59715

Hon. Marc Racicot, Attorney General
Paul D. Johnson, Asst. Atty. General
Justice Bldg.
Helena, MT 59620

Helene Orenstein
Attorney at Law
125 W. Mendenhall
Bozeman, MT 59715

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy