FILED

09/05/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0430

DA 16-0430

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 216

DANNY SARTAIN,

        Petitioner and Appellant,

    v.

STATE OF MONTANA,

        Respondent and Appellee.

APPEAL FROM:     District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 08-86B
Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Danny Sartain, Self-Represented, Deer Lodge, Montana

        For Appellee:

            Timothy C. Fox, Montana Attorney General, Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

            Marty Lambert, Gallatin County Attorney, Bozeman, Montana

Submitted on Briefs: May 31, 2017

Decided: September 5, 2017

Filed:

_____
Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1   Danny Sartain (Sartain) appeals from an Order entered in the Montana Eighteenth Judicial District Court, Gallatin County, denying his petition for touch DNA testing. We affirm.

¶2   Sartain presents the following issue for review:

*Whether the District Court properly denied Sartain's petition for touch DNA testing.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3   In 2009, Sartain was found guilty of burglary, designated a persistent felony offender, and sentenced to forty years in the Montana State Prison. He appealed that conviction to this Court, challenging the district court's denial of his speedy trial claim and also raising ineffective assistance of counsel (IAC) claims. This Court summarized the facts relevant to Sartain's direct appeal as follows:

> On March 25, 2008, in Bozeman, Timothy Hop returned from snow skiing and found a male intruder in his house. He chased the man out of his house and called 911. Police were dispatched. A responding officer observed a man matching Hop's description of the intruder jogging down a sidewalk in the area. Another resident of the area, Jason Schutz, was watching the jogging man when the officer stopped and asked Schutz what he was watching. He responded that the jogging man had just jumped the fence in his backyard, cut through a neighbor's yard, and then started running down the street. The officer arrested the jogging man, defendant Sartain, on suspicion of burglary. A short time later, the officer took Sartain back to the scene of the burglary, had him step out of the police vehicle and conducted a "show-up" identification of Sartain first with Hop and then Kristi Helsper, another neighbor who had observed a man jogging down the street after hearing a loud noise. Both stated that Sartain matched the description of the person, but that they were not able to positively identify him. Later at trial, Hop testified that he was positive that Sartain was the intruder.

*State v. Sartain*, 2010 MT 213, ¶ 4, 357 Mont. 483, 241 P.3d 1032 (*Sartain I*).

2

¶4     Relevant to the instant proceeding, our review of the trial transcript filed in the direct appeal indicates there was testimony that fresh footprints were found around Timothy Hop's (Hop) backyard fence, which were consistent with the tread pattern and size of boot Sartain was wearing when he was apprehended.  Hop also discovered fresh "jimmy" marks on the back and front doors to his apartment, which were consistent with use of a pry bar that was found by law enforcement in an alley approximately one block from Hop's apartment.  Officers also found a footprint near the pry bar—similar to the other footprints found in the alley, in Hop's backyard, and in Jason Schutz' (Schutz) backyard—which was consistent with the tread pattern and size of boot Sartain wore.

¶5     We affirmed the denial of Sartain's speedy trial claim and dismissed the IAC claims without prejudice to Sartain raising them in a postconviction proceeding.  The United States Supreme Court denied Sartain's petition for writ of certiorari.  *Sartain v. Montana*, 562 U.S. 1237, 131 S. Ct. 1514 (2011).  Next, Sartain filed a petition for postconviction relief in district court raising primarily his IAC claims.  The district court dismissed Sartain's petition and we affirmed.  *Sartain v. State*, 2012 MT 164, 365 Mont. 483, 285 P.3d 407 (*Sartain II*).  On March 29, 2013, Sartain filed a Petition for Performance of Fingerprint Analysis and Testing, which the district court denied with prejudice.  Sartain appealed and we affirmed.  We concluded that Sartain's claims could have been raised on direct appeal and that Sartain did not meet the exception to the time limitations governing direct appeal and postconviction relief set forth in § 46-21-102(2), MCA, because there was no basis to assume a reasonable jury would not have convicted Sartain with the additional fingerprint analysis evidence.  *State v. Sartain*, 2013 MT 372N

3

(*Sartain III*). Finally, on May 22, 2014, Sartain filed a Motion for Credit for Time Served in the district court seeking 384 days credit toward his sentence for burglary. The district court concluded that Sartain was incarcerated on unrelated offenses and denied his motion. We affirmed. *State v. Sartain*, 2015 MT 306N (*Sartain IV*).

¶6 The subject of the instant appeal is Sartain's request that touch DNA analysis be conducted on fingerprint evidence collected from the medicine cabinet mirror and rear door of Hop's apartment, areas which Hop believed Sartain had touched. The evidence technician investigating the crime scene, Thomas Weightman, obtained a partial print from these areas, but the prints collected were insufficient to conduct a traditional DNA analysis. Sartain contends that if touch DNA testing of the partial fingerprints revealed DNA that did not match his, there is a strong possibility he would have been exonerated. Sartain, referring to the Innocence Protection Act (IPA), 18 U.S.C. § 3600, and federal precedent holding that touch DNA evidence can constitute new evidence, argues that his request for DNA testing is therefore timely and must be allowed.

¶7 The District Court requested briefing from the parties and considered the merits of Sartain's request pursuant to both the IPA and Montana's statute allowing for petitions to perform DNA testing, § 46-21-110, MCA. The District Court concluded that even if the IPA applied to Sartain's request, Sartain failed to set forth a plausible theory under which the DNA evidence would establish his innocence. The District Court noted that failure to establish a plausible theory of innocence was fatal to Sartain's petition under the IPA. The District Court addressed application of § 46-21-110, MCA, and similarly concluded that Sartain had not shown, in light of the evidence produced at trial, there was a

4

reasonable probability that Sartain would not have been convicted if favorable results had been obtained through DNA testing.

¶8 We consider the application of the IPA to these proceedings, and resolve Sartain's request by applying the provisions of § 46-21-110, MCA.

## STANDARD OF REVIEW

¶9 A district court's decision regarding a petition for DNA testing under § 46-21-110, MCA, constitutes a mixed question of law and fact, which we review de novo. *Golden v. State*, 2014 MT 141, ¶ 14, 375 Mont. 222, 326 P.3d 430. Questions of statutory interpretation are reviewed de novo. *State v. Cooksey*, 2012 MT 226, ¶ 32, 366 Mont. 346, 286 P.3d 1174; *United States v. Watson*, 792 F.3d 1174, 1177 (9th Cir. 2015).

## DISCUSSION

¶10 Improvements in the accuracies in building DNA profiles have opened the door to new sources of DNA evidence. Touch DNA is

> the genetic information recovered from epithelial (skin) cells left behind when a person makes contact with an object. During the commission of a crime, an assailant can leave touch DNA samples behind . . . on a victim's clothing or other items implicated in the crime. Touch DNA testing uses the same . . . technology used to test more traditional sources of DNA-- blood, semen, saliva, and other bodily fluids--to test recovered epithelial cells. The difference between "traditional" DNA testing--the testing of bodily fluids--and touch DNA testing is that material from which the DNA is collected, not the method by which the DNA sample is analyzed.

Victoria Kawecki, Comment, *Can't Touch This? Making a Place for Touch DNA in Post-Conviction DNA Testing Statutes*, 62 Cath. U. L. Rev. 821, 828-29 (2013). *See also Watson*, 792 F.3d at 1177; *Bean v. State*, 373 P.3d 372, 377-78 (Wyo. 2016). Touch DNA testing "is possible even if the sample contains only seven or eight cells from the

outermost layer of [] skin." Davis Phillips, *State v. Carver: A Cautionary Tale about the Use of Touch DNA as Inculpatory Evidence in North Carolina*, 49 Wake Forest L. Rev. 1545, 1558 (2014) (internal citations and quotations omitted). Although not specifically addressed, we assume for purposes of this appeal that touch DNA testing was not available at the time of Sartain's prosecution.

¶11 Sartain argues that the District Court erred in holding that his petition for touch DNA testing was untimely. The State contends that timeliness was not the basis for the court's ruling. Also, the State argues that, even assuming favorable DNA results, Sartain has failed to show the evidence would be material to the question of whether he was the perpetrator of the burglary.

¶12 In 2004, Congress passed the IPA, 18 U.S.C. § 3600, which opened the door to revisiting convictions when DNA left at the crime scene could potentially exonerate the wrongly convicted. The IPA provides that the court "shall order DNA testing" upon "a written motion by an individual sentenced to imprisonment or death pursuant to a conviction for a Federal offense . . ." if ten criteria are satisfied. 18 U.S.C. § 3600(a). Thus, by its terms, the IPA is applicable only to imprisonment pursuant to a federal offense. The IPA addresses "state offense[s]" when evidence of the state offense was "admitted during a Federal sentencing hearing and exoneration of such offense would entitle the applicant to a reduced sentence" *and* "no adequate remedy under State law to permit DNA testing of the specified evidence relating to the State offense . . ." exists. 18 U.S.C. § 3600(a)(1)(B)(i)-(ii). Sartain is not imprisoned as a result of a federal offense. Sartain also does not allege he wants DNA testing in his state burglary conviction

6

because his state conviction was used to enhance a federal sentence. These reasons, each standing alone, are sufficient to deny Sartain's request for DNA testing pursuant to the IPA. Further, Montana provides an adequate remedy for DNA testing through § 46-21-110, MCA.

¶13 The dispositive provision of § 46-21-110, MCA, for this appeal is set forth in subsection (5), which provides:

> The court shall grant the petition if it determines that the petition is not made for the purpose of delay and that:
> (a) the evidence sought to be tested is available and has been subject to a chain of custody sufficient to establish that it has not been substituted, tampered with, degraded, contaminated, altered, or replaced in any material aspect;
> (b) the identity of the perpetrator of the felony was or should have been a significant issue in the case;
> (c) the petitioner has made a showing that the evidence sought to be tested has a reasonable probability, assuming favorable results, of being material to the question of whether the petitioner was the perpetrator of the felony that resulted in the conviction;
> (d) in light of all the evidence, there is a reasonable probability that the petitioner would not have been convicted if favorable results had been obtained through DNA testing at the time of the original prosecution; and
> (e) the evidence sought to be tested was not previously tested or was tested previously but another test would provide results that are reasonably more discriminating and probative on the question of whether the petitioner was the perpetrator of the felony that resulted in the conviction or would have a reasonable probability of contradicting the prior test results.

Section 46-21-110(5), MCA. In denying Sartain's petition for DNA testing pursuant to § 46-21-110, MCA, the district court "conclude[d] that Sartain has not shown under § 46-21-110(5)(d), MCA, that in light of all the evidence presented at the trial, there is reasonable probability that Sartain would not have been convicted if favorable results had been obtained through DNA testing at the time of the trial." We agree.

7

¶14 Assuming touch DNA testing of the fingerprint lifts from the mirror and door would not have Sartain's DNA, the absence of Sartain's DNA does not exculpate Sartain. While certainly the presence of Sartain's DNA on the objects would be inculpatory, an assumption of exoneration does not follow from the absence of Sartain's DNA on those objects. In light of the evidence and the circumstances surrounding the burglary, the absence of Sartain's fingerprints on the mirror and door does not establish "a reasonable probability that the petitioner would not have been convicted." Section 46-21-110(5)(d), MCA. In making this conclusion, we consider all of the evidence produced at trial.

¶15 To begin, the crime occurred in the middle of the day when visibility was good. Hop identified Sartain at trial as the intruder he saw in his apartment and yard when he arrived home after skiing. The responding officer observed Sartain, who matched Hop's description, running away from the area of Hop's apartment immediately following a report from dispatch of the burglary. A neighbor, Schutz, also observed Sartain running down the sidewalk after Sartain jumped his fence and cut across another yard. Schutz had a brief conversation with and subsequently identified Sartain. Footprints in the yards of Hop and Schutz were consistent in size and tread pattern with boots worn by Sartain. A pry bar was found nearby in an alley which had marks similar to the pry marks found on Hop's doorjambs. A footprint next to the pry bar matched the size and tread pattern of Sartain's boots.

¶16 We conclude, in light of the evidence produced at trial, there is not a reasonable probability Sartain would have been exonerated by touch DNA evidence showing his

8

DNA was not on a mirror or door in Hop's apartment. Sartain has failed to establish he was entitled to touch DNA testing and the District Court correctly denied his petition.

**CONCLUSION**

¶17 Sartain is not entitled to touch DNA testing pursuant to the IPA. We affirm the District Court's conclusion that there was no reasonable probability Sartain would have been exonerated if favorable DNA results had been obtained. The District Court correctly applied the provisions of § 46-21-110, MCA.

/S/ LAURIE McKINNON

We Concur:

/S/ BETH BAKER
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA
/S/ DIRK M. SANDEFUR